LUCERO, Circuit Judge.
In this appeal, Lenora Jordan, Warden of the James Crabtree State Correctional Center in Helena, Oklahoma (“Oklahoma”) seeks review of a conditional grant of ha-beas relief to Oklahoma state prisoner, Adrian Gipson. The sole issue on appeal is whether prosecutorial remarks before the sentencing jury which referenced Gip-son’s prior convictions impermissibly infringed upon his right to be free from double jeopardy. We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and REVERSE the grant of habeas relief.
I
Gipson was tried by a jury for second-degree burglary. Because he had been previously convicted of two or more felony offenses, he was subject to punishment under Oklahoma’s habitual offender provision for a minimum term of 20 years. (Jury Instructions at 12); see also Okla. Stat. tit. 21, § 51.1(B) (habitual offender *1195 provision). At trial, guilt and sentencing were consolidated — Gipson admitted to the charge, thus leaving the jury to decide only his sentence. The prosecutor informed the jury that Gipson had been previously convicted of six felony offenses: injury to a minor child, robbery by fear, second-degree burglary, burglary of an automobile, burglary of a vending machine, and uttering a forged instrument. In closing, the prosecutor argued that Gipson has a propensity for recidivism and stated:
I would submit to you, ladies and gentlemen, that at a minimum .... an appropriate sentence would be ten years for each of the [prior] convictions, including this one here today, which makes seven, so what I’m telling you is that I think an appropriate sentence, at least a minimum sentence, in this case, would be 70 years.
(R. at 185.) In instructing the jury, the district court clarified that:
[t]he defendant has admitted that he has 6 previous convictions. You may not consider these previous convictions as proof of guilt in the case before you. You may consider the previous convictions for the purpose of determining the punishment if you find the defendant is guilty of the crime of Burglary Second Degree in the present case.
(Jury Instructions at 12.) The jury recommended seventy years imprisonment, and Gipson was sentenced accordingly.
On direct appeal to the Oklahoma Court of Criminal Appeals (“OCCA”), Gipson argued that his sentence was excessive. In the course of making that argument, he urged: “[i]n determining the excessiveness of the sentence, the Court should review possible improper influences upon the jury in assessing punishment” — namely, the prosecutor’s reference to early release from the sentences for Gipson’s prior convictions and the prosecutor’s exhortation to the jury to sentence him to seventy years. (R. at 143, 144-45.) Gipson further stated that “[prosecutorial] comments which asked the jurors to punish Appellant ten years for each felony caused the jurors to violate Appellant’s right to be free from double jeopardy,” and that “[t]he jury’s imposition of a sentence ten times greater than the statutory maximum for the actual offense reflects the prejudice of the prosecutor’s argument.” (R. at 145.) In the face of Gipson’s claim that, inter alia, the prosecutor’s comments caused the jury to violate his double jeopardy rights, the OCCA affirmed Gipson’s conviction and sentence, concluding that Gipson’s sentence was “neither excessive nor the result of prosecutorial misconduct.” Gipson v. Oklahoma, No. F-97-165, slip op. at 2 (Okla.Crim.App. Nov. 3,1997).
Gipson filed a federal habeas petition pursuant to 28 U.S.C. § 2254, again challenging his sentence on double jeopardy grounds. The magistrate judge issued a report, revised after considering objections raised by Oklahoma, which recommended a conditional writ of habeas corpus granting relief on Gipson’s double jeopardy claim. In July 2002, the district court issued an order adopting the magistrate’s report. Oklahoma now appeals, arguing that the district court failed to accord proper deference to the OCCA’s decision denying relief.
II
As a threshold matter, we must determine the appropriate standard of review due to the OCCA’s affirmance of Gipson’s sentence. Because Gipson filed his petition for habeas relief after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act (“AEDPA”), AEDPA’s provisions apply. See Rogers v. Gibson, 173 F.3d 1278, 1282 n. 1 (10th Cir.1999) (citing Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997)). AEDPA provides that if a claim is adjudicated on the merits in state court, *1196 we will grant habeas relief to a petitioner only if he can establish that the state court decision was “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” or “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. § 2254(d)(1), (2).
Under the “contrary to” clause, we grant relief only “if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts.” Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Under the “unreasonable application” clause, relief is provided only “if the state court identifies the correct governing legal principle from [the Supreme Court’s] decisions but unreasonably applies that principle to the facts of the prisoner’s case.” Id. Thus we may not issue a habeas writ simply because we conclude in our “independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.” Id. at 411,120 S.Ct. 1495.
Conversely, if the state court did not decide a claim on the merits, and the claim is not otherwise procedurally barred, we address the issue de novo and the § 2254(d)(1) deference requirement does not apply. See Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir.1999). Our standard of review therefore depends on whether the OCCA denied Gipson’s double jeopardy claim on the merits. Where, as here, there is no indication suggesting that the state court did not reach the merits of a claim, we have held that a state court reaches a decision “on the merits” even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion. Id. at 1177.
In the instant case, in consideration of Gipson’s argument that improper prosecutorial comments violated his double jeopardy rights, the OCCA found that Gipson’s sentence was not the result of prosecutorial misconduct. Thus because the OCCA upheld Gipson’s sentence in the face of his argument that prosecutorial misconduct violated his double jeopardy rights we treat the OCCA’s decision as an “adjudication on the merits,” and defer to its result, even though its reasoning is not expressly stated.[1] Aycox, 196 F.3d at 1177. In so doing, however, we
*1197 uphold the state court’s summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.
Id. at 1178. We stress that this “independent review” standard under Aycox does not constitute a de novo analysis of Gip-son’s claims. Instead, we defer to the OCCA’s decision unless we conclude that its result — not its rationale — is “legally or factually unreasonable.” Id.
Having determined the proper standard of review under AEDPA, we note that the federal circuits addressing similar claims have diverged in determining the standard for evaluating the prosecutorial misconduct at issue. Generally, improper prosecutorial remarks will not warrant federal habeas relief unless the remark “so infected the trial with unfairness as to make the resulting conviction a denial of due process.” Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). If, however, the challenged statements “effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair,” but rather only that the violation may not be “deemed harmless beyond a reasonable doubt.” Mahorney v. Wallman, 917 F.2d 469, 472, 474 (10th Cir. 1990) (quotation omitted).
Thus, for example, the Fifth Circuit in Rogers v. Lynaugh, 848 F.2d 606, 610 (5th Cir.1988), reasoned that where prosecuto-rial comments are “of such character that a jury would naturally and necessarily take [them] to be an exhortation to assess multiple punishments for the same offense” such misconduct implicates a “specific constitutional right.” Id. at 611. Conversely, the Ninth and Third circuits have analyzed similar claims of prosecutorial misconduct as generalized due process claims, and, as a result, have proceeded to examine whether such comments deprived a defendant of his right to a fair trial. See, e.g., Beardslee v. Woodford, 327 F.3d 799, 821-22 (9th Cir.2003) (applying a general standard of review to determine whether the trial was unfair when the prosecutor made comments suggesting that the jury punish defendant for a prior homicide); Lesko v. Lehman, 925 F.2d 1527, 1545-46 (3d Cir. 1991) (applying a general standard to evaluate whether the trial was rendered fundamentally unfair when the prosecutor made comments instructing the jury that it had a “duty” to “even the score,” in reference to defendant’s prior murder conviction). However, as we will proceed to analyze below, because we cannot conclude that the OCCA’s decision upholding Gipson’s sentence was contrary to any clearly established law, we need not reach the question of which standard of review to apply to the claim of prosecutorial misconduct in the instant case.
Ill
Under AEDPA, to warrant habeas relief, Gipson must show that the OCCA’s determination, affirming Gipson’s sentence and impliedly finding that the challenged prosecutorial remarks did not violate his right against double jeopardy, was “legally *1198 or factually unreasonable,” see Aycox, 196 F.3d at 1178.
The Double Jeopardy Clause of the Fifth Amendment, U.S. Const, amend. V, prohibits the imposition of “multiple punishments for the same offense,” North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), and is enforceable against the states through the Fourteenth Amendment. On appeal, Gip-son relies by analogy on a Fifth Circuit case in which the court concluded that prosecutorial comments violated the Double Jeopardy Clause. See Rogers, 848 F.2d at 606. In Rogers, the State introduced evidence of defendant’s three prior felony convictions during the sentencing phase of the trial and made the following argument to the jury:
This is his fourth final conviction for a felony offense. Robbery, robbery, burglary and now robbery again. I submit to you that each one of those felony offenses is worth at least 10 years. He received 12 on the first three. You put those 12 together and you come up with 36. And that is discounting what he has done since he got out of the penitentiary. But I submit to you that if you allocate just 10 years to each of those felony convictions you come up with 40.
Id. at 610. Although the State in Rogers argued that the prosecutor in his closing argument spoke primarily to Rogers’ capacity for rehabilitation and the need for specific deterrence, the Fifth Circuit noted that the prosecutor “did not say ... what the three prior offenses ... implied about [defendant’s] facility for rehabilitation,” but rather, “the prior offenses themselves were said to be each worth ten years.” Id. at 611. Given that the jury ultimately selected the forty-year term advocated by the prosecutor, id. at 612, the Rogers court reasoned that the jury had “naturally and necessarily” understood the prosecutor’s argument as “an exhortation to assess multiple punishments for the same offense,” id. at 611.
The alleged prosecutorial misconduct in the instant case, although borderline, is less straightforward than the misconduct presented in Rogers. Critically, prior to referencing Gipson’s six prior convictions, and unlike the prosecutor in Rogers, the prosecutor addressed Gipson’s facility for rehabilitation and his propensity to commit future crimes in light of his prior convictions. He stated:
Sending [Gipson] to prison for two to four years or five years hasn’t deterred him, and I don’t know if anything short of locking him up for as long a period of time as we can is going to deter him. So I’m telling you, ladies and gentlemen, that I think the only way to keep Adrian Gipson from committing a crime is to keep him locked up.
(R. at 185.)
Moreover, although we by no means commend the prosecutor’s linking of a specific number of years to each of Gipson’s prior crimes, dispositive to our analysis is the fact that unlike the court in Rogers (decided prior to the AEDPA amendments), we may not engage in a de novo review of the alleged prosecutorial misconduct in this case. Even were we inclined to grant relief on Gipson’s double jeopardy claim, we must uphold the OCCA’s determination unless we are persuaded that it “contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.” Aycox, 196 F.3d at 1178. Because we have no basis to infer that the OCCA acted unreasonably in its factual determinations, in the absence of a clearly established contrary Supreme Court holding at the time the OCCA issued its decision, we must defer to the OCCA’s result. See Yarborough v. Alvarado, 541 U.S. -, *1199 124 S.Ct. 2140, 2142, 158 L.Ed.2d 938 (2004).
There is no Supreme Court precedent precisely addressing prosecutorial misconduct in the context of recidivism statutes. However, the Supreme Court has explicitly articulated that enhanced punishment for recidivist conduct does not violate the Double Jeopardy Clause. See, e.g., Gryger v. Burke, 334 U.S. 728, 732, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948). That is, in upholding recidivism statutes, the Court has explicitly articulated that an enhanced punishment imposed for a later offense based on earlier offenses “is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,” but instead as “a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.” Gryger, 334 U.S. at 732, 68 S.Ct. 1256. Similarly, in Witte v. United States, the Supreme Court explained that the “consideration of offender-specific information at sentencing ... does not result in ‘punishment’ for [past] conduct.” 515 U.S. 389, 400-01, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) (holding that the Double Jeopardy Clause was not violated when a defendant was convicted and sentenced for a crime when the conduct underlying that offense had been considered in determining the defendant’s sentence for a previous conviction); see also Nichols v. United States, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (holding that criminal history provisions in the Sentencing Guidelines and state recidivist statutes “do not change the penalty imposed for the earlier conviction”); Moore v. Missouri, 159 U.S. 673, 677, 16 S.Ct. 179, 40 L.Ed. 301 (1895) (reasoning that recidivist statutes do not punish the accused for previous offenses but rather “the punishment is for the last offense committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself’) (quotation omitted). Thus in the context of alleged prosecutorial misconduct, the Ninth Circuit has held that pros-ecutorial comments to a sentencing jury that referenced defendant’s prior convictions do not deprive the defendant of a fair trial when they are presented to the jury through “the lens of an aggravating factor.” See Beardslee, 327 F.3d at 822-23 (concluding that although a prosecutor’s references to defendant’s prior homicide conviction “pushed the boundaries of permissible argument,” such comments were unlikely to confuse the jury in light of the judge’s instructions and other proper pros-ecutorial comments referring to the prior homicide as an aggravating circumstance).
With these precedents in mind, we conclude that the OCCA’s decision is not contrary to clearly established federal law. Lacking either countervailing Supreme Court precedent or an indication that the OCCA’s determination of the facts in this case is manifestly unreasonable, we defer to the OCCA’s affirmance of Gipson’s sentence. Accordingly, the district court’s grant of conditional habeas relief is REVERSED.

. Although the dissent, in concluding otherwise, relies on the fact that the OCCA referenced only state cases, the Supreme Court in Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002), made clear that under AEDPA there is no requirement that the state court cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them.'' Id. at 8, 123 S.Ct. 362. Moreover, unlike the Tenth Circuit cases cited by the dissent where we reasoned that a citation to a state court decision may indicate that the state court did not reach a federal claim, we would overreach in this instance to conclude that the OCCA denied Gipson's prosecutorial misconduct claim on a state law ground unrelated to his double jeopardy claim. Such an argument would be compelling if, for example, the two state cases the OCCA cited specifically addressed Gipson's other claims of prosecutorial misconduct — i.e., comments that the prosecutor improperly informed the jury of possible early release or parole considerations — yet were silent as to double jeopardy. Cf. Duckett v. Mullin, 306 F.3d 982, 991 n. 1 (10th Cir.2002). Similarly, Gipson would have a stronger case for de novo review if he had made both a state and Fifth Amendment claim to be free from multiple punishments, and the OCCA had referenced only the state law claim. Cf. Ellis v. Mullin, 326 F.3d 1122, 1128 (10th Cir.2002); Neill v. Gibson, 278 F.3d 1044, 1053-54 (10th Cir. *1197 2001); Romano v. Gibson, 239 F.3d 1156, 1164-66 (10th Cir.2001). To the contrary, the OCCA's holding that Gipson's sentence was not the result of prosecutorial misconduct, renders his federal claim — that prosecu-torial misconduct caused the jury to violate his double jeopardy rights — meritless, “or otherwise result[s] in its denial.” See Ellis, 326 F.3d at 1131 (Brorby, J., dissenting) (explaining that a state court decision citing only state law may nonetheless adjudicate the federal claim on the merits).