F I L E D
United States Court of Appeals
Tenth Circuit

March 28, 2007

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

SALVADOR JOSEPH LAFAUCI,

Petitioner - Appellant,

v.

REGINALD HINES, Warden,

Defendant - Appellee.

No. 06-7106

(E. D. Oklahoma)

(D.C. No. 04-CV-00004-FHS)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

Before **LUCERO**, **HARTZ**, and **GORSUCH**, Circuit Judges.

Salvador LaFauci was convicted in Oklahoma state court on charges of robbery by force or fear, first-degree burglary, and making an obscene phone call. He filed an application in the United States District Court for the Eastern District of Oklahoma seeking relief under 28 U.S.C. § 2254. The court denied the application and his request for a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c)(1)(B) (requiring COA to appeal denial of § 2254 motion). On January 16, 2007, he filed with this court an application for a COA. It contends that (1) because the victim was well known, the venue of the trial should have been changed; (2) the evidence to convict him was insufficient; (3) he was denied due process of law; (4) the victim's identification of him at trial was tainted by a pretrial show-up arranged by law-enforcement officers; (5) the

district court erred in not giving an alibi instruction; (6) his counsel inadequately represented him; (7) his convictions on both robbery and burglary charges violated his double-jeopardy rights; and (8) his sentence is excessive.

We deny a COA and dismiss the appeal.

## I.     BACKGROUND

On March 14, 2000, a male intruder entered Virginia Reheard's home. While she was lying in bed, he opened her bedroom door and turned on the light, saying, "If you don't give me all of your money, I'm going to kill you." R. Vol. 4 at 12.  Ms. Reheard reached for a pistol under her pillow, but a struggle ensued and the intruder disarmed her.  When she informed the assailant that she had money in her kitchen, he dragged her down a 40-foot hallway and forced her to give him three bank bags containing coins and bills.  At one point he grabbed her and she tried to strike him back.  Her heart monitor fell to the floor and the assailant fled.  During these events several lights were on in the house, so Ms. Reheard had a clear view of the assailant's face.

After the attack Ms. Reheard received several obscene phone calls.  She complained to police, telling them that the caller's voice sounded similar to the intruder's.  The calls were ultimately traced to an apartment occupied by Mr. LaFauci, Michelle Lee, and Jeremy Jenkins.  Officer Ken Long interviewed Ms. Lee by telephone and at work.  She provided information incriminating Mr. LaFauci and signed a consent form to search the apartment.  A search of

Mr. LaFauci's room revealed one of Ms. Reheard's bank pouches. Mr. LaFauci, who was at the apartment at the time, was arrested. The officers found in his billfold an address label with Ms. Reheard's phone number and address written on it.

While Mr. LaFauci was in custody, Officer Long called Ms. Reheard and requested her to come to the Sheriff's office to view a lineup. The office was in the same building as the jail. When Ms. Reheard arrived, she waited in the lobby area. Long was with Mr. LaFauci in the building's office section, but proceeded to take him to the jail. He had not been informed that Ms. Reheard had arrived, and his path with Mr. LaFauci brought them to the lobby. Upon seeing the two men, Ms. Reheard stood up and exclaimed, "[T]hat's him!" R. Vol. 4 at 32. Despite this identification she was asked to view a photographic lineup. The array contained, apparently by accident, two different pictures of Mr. LaFauci. When Ms. Reheard told Long about the duplication, she was instructed to circle the one that she thought most resembled the intruder.

At trial Ms. Reheard identified Mr. LaFauci as the intruder. Despite the testimony of a witness who claimed that he was elsewhere on the night of the offense, Mr. LaFauci was convicted. He was sentenced to 51 years' imprisonment.

II.    DISCUSSION

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, an applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in state court, a federal court will grant habeas relief only when the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, relief is provided only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case. Thus we may not issue a habeas writ simply because we conclude in our independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (citations and internal quotation marks omitted). Therefore, for those of Mr. LaFauci's claims that were adjudicated on the merits in state court, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

We need not address the applicant's assertions that (1) he should have been granted a change of venue or (2) the evidence at trial was insufficient to convict him, because they were not raised in his habeas application before the district court. *See Parker v. Scott*, 394 F.3d 1302, 1307 (10th Cir. 2005) (claims raised for the first time on appeal are deemed to be waived). Moreover, Mr. LaFauci's general contention that (3) his due-process rights were violated fails to provide sufficient particularity for us to determine whether he has a claim. *See Fogle v. Pierson*, 435 F.3d 1252, 1263 n.7 (10th Cir. 2006) ("*Pro se* status does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based. Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." (ellipsis, brackets and internal quotation marks omitted)).

As to the preserved claims, no reasonable jurist could dispute the district court's cogent analysis rejecting the assertions that (4) the victim's in-court identification of Mr. LaFauci was tainted by an impermissibly suggestive show-up; (5) the trial court denied him due process by not giving a specific jury instruction regarding alibi witnesses; (6) his counsel was ineffective in not requesting an alibi jury instruction; (7) his double-jeopardy rights were violated; and (8) his sentence was excessive.

## IV.    CONCLUSION

We therefore deny a COA and DISMISS the appeal.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge