FILED
United States Court of Appeals
Tenth Circuit

June 5, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ADRIAN LOPEZ,

        Petitioner - Appellant,

v.

DAVID R. MCKUNE, Warden,
Lansing Correctional Facility; PAUL
MORRISON, Kansas Attorney
General,

        Respondents - Appellees.

No. 08-3284

(D. Kansas)

(D.C. No. 5:07-CV-03326-MLB)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **EBEL**, and **O'BRIEN**, Circuit Judges.

In 1999 Adrian Lopez was convicted of first-degree murder in Kansas state

court and sentenced to life imprisonment. After the Kansas Supreme Court

affirmed his conviction and sentence, *see State v. Lopez*, 22 P.3d 1040 (Kan.

2001), Mr. Lopez filed an application for postconviction relief in state court under

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Kan. Stat. Ann. § 60-1507. The trial court rejected Mr. Lopez's claim that his trial counsel had rendered ineffective assistance with respect to his possible incompetency to stand trial. The Kansas Court of Appeals affirmed and the Kansas Supreme Court denied review. Mr. Lopez then filed in the United States District Court for the District of Kansas an application for relief under 28 U.S.C. § 2254. The district court denied the application. We granted a certificate of appealability (COA) on Mr. Lopez's ineffective-assistance claim, permitting him to appeal to this court. *See* 28 U.S.C. § 2253(c)(1) (requiring a COA to appeal denial of habeas application). We now affirm the district court.

## I. BACKGROUND

Upon being charged in state court, Mr. Lopez was first represented by public defenders Wendell Betts and Julia Spainhour. Spainhour became concerned about Mr. Lopez's competency based on problems that she and Betts had in communicating with him. Spainhour contacted Dr. William Logan, a psychiatrist, and arranged for him to evaluate Mr. Lopez to determine whether he was competent to stand trial and whether his mental capacity was diminished at the time of his offense. Dr. Logan interviewed Mr. Lopez at the Shawnee County Jail on January 28, 1999, but scheduling problems forced him to cut short the interview after 90 minutes. Although he was able to conduct mental-capacity tests, he did not complete his competency evaluation.

Dr. Logan sent defense counsel a fax informing them of the truncated interview and of his wish to meet with Mr. Lopez again to complete his evaluation. But upon receiving no response, on February 1 he sent Albert Bandy, the public defender who had become Mr. Lopez's lead counsel, a report containing his preliminary finding that Mr. Lopez was competent. He said that Mr. Lopez had a factual understanding of the charges against him and had not expressed any distrust of his lawyers. But he noted that the interruption of the interview had kept him from completing the evaluation "to [his] professional satisfaction and to the potential detriment of Mr. Lopez." State Postconviction R. Vol. One at 30. And he expressed concern with Mr. Lopez's newfound belief that God would protect him from a conviction, saying that this belief was likely to affect Mr. Lopez's decisions, particularly decisions "related to his criminal offense and perceived need to work with his attorneys." *Id.* at 49. Bandy did not attempt to arrange for Dr. Logan to complete his evaluation.

It is unclear whether Bandy knew the purposes or content of the evaluation. At trial he told the judge, "I don't know about what the report says, it was done to determine [Mr. Lopez's] sanity. I don't know if the question of competency ever was touched upon." *Id.* Vol. Fourteen at 26. He similarly testified in the state-court postconviction proceeding that he understood the evaluation to concern only a possible mental-defect defense and not competency. The report's introductory paragraph, however, spells out that the "[q]uestions to be addressed by this

evaluation would include Mr. Lopez' competency to stand trial," *id.* Vol. One at 29; and the first part of its discussion section is devoted to this topic.

In any event, Dr. Logan told Bandy to watch for specific signs of deterioration in Mr. Lopez's ability to assist with his defense. In the state postconviction proceeding Bandy testified that he had concerns about competency "during the entire time" he represented Mr. Lopez and that "you can't read Dr. Logan's report and not have concerns." *Id.* Vol. Twenty-Three at 86. Nevertheless, he insisted that there were initially no "red flags" of the kind Dr. Logan told him to watch for; Bandy found Mr. Lopez to be "oriented in time and space" and generally able to discuss his case in detail. *Id.* at 69 (internal quotation marks omitted).

On the Friday three days before the start of trial, however, communication between Bandy and Mr. Lopez broke down. Bandy strongly urged Mr. Lopez to enter into a plea agreement and Mr. Lopez "shut down on [him]." *Id.* at 73. Mr. Lopez insisted that God would protect him in the trial and refused to work with Bandy. On the first day of trial, Bandy sought leave to withdraw as counsel. When the trial court denied the request, Bandy moved the court to find that Mr. Lopez was not competent. Although the trial court denied this request, it adopted the prosecution's suggestion to have Dr. James Horne, a psychiatrist employed at the Shawnee County Jail, conduct a competency examination during the lunch hour. Dr. Horne found Mr. Lopez to be alert, cooperative, aware of the

-4-

charges against him and the potential consequences of his trial, and able to cooperate in his defense. After receiving Dr. Horne's report, the trial court reiterated its competency ruling and asked Bandy whether he would like to put anything more in the record; Bandy offered nothing further. In the postconviction proceeding, Bandy could not recall discussing Mr. Lopez's background or religious ideas with Dr. Horne before the latter's evaluation; Dr. Horne's report does not indicate what background information he had or how he determined that Mr. Lopez was competent.

Following affirmance of his conviction, Mr. Lopez sought postconviction relief in state court, asserting that Bandy had rendered ineffective assistance by failing to investigate his competency. Betts, Spainhour, Bandy, and Dr. Logan testified at evidentiary hearings, as did Sean O'Brien, a law professor who had been a criminal-defense attorney. O'Brien opined that a reasonably competent attorney would have recognized that Dr. Logan's conclusion on competency was provisional and would have arranged for him to complete the evaluation.

The court denied relief in a written order. Treating *Strickland v. Washington*, 466 U.S. 668 (1984), and a related Kansas Supreme Court decision as the controlling precedents on ineffective assistance, it disagreed with O'Brien's conclusion, saying that the conclusion rested on the mistaken premise that Mr. Lopez was incompetent at the time he was tried. Drs. Logan and Horne had both found him competent, the court noted. The court also pointed to

-5-

Bandy's unchallenged testimony that Mr. Lopez was able to communicate with counsel and assist with his defense until just before his trial began. It said that Bandy "had nothing with which to challenge Dr. Horn[e]'s report" and that any challenge "would probably not have been well received" by the trial court, which had sought the evaluation "in an abundance of caution." Aplee. Br. Attach. (2) at 7. Finally, it observed that Mr. Lopez had entered guilty pleas in several other cases shortly after his conviction in the underlying case and that the judge had engaged in "an extensive inquiry" before accepting those pleas. *Id.* at 8.

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in state court, a federal court will grant habeas relief only when the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). As we have explained:

> Under the "unreasonable application" clause, relief is provided only
> if the state court identifies the correct governing legal principle from
> the Supreme Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case. Thus we may not issue a
> habeas writ simply because we conclude in our independent judgment
> that the relevant state-court decision applied clearly established

-6-

> federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets, citations, and internal quotation marks omitted); *see Valdez v. Bravo*, 373 F.3d 1093, 1096 (10th Cir. 2004) ("The Supreme Court has cautioned that an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law." (internal quotation marks omitted)). In addition, "AEDPA . . . mandates that state court factual findings are presumptively correct and may be rebutted only by 'clear and convincing evidence.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1175 (10th Cir. 2004) (quoting 28 U.S.C. § 2254(e)(1)).

Mr. Lopez contends that the Kansas postconviction court unreasonably applied the principles set out in *Strickland* when it rejected his ineffective-assistance claim. One challenging his conviction or sentence on the basis of ineffective assistance must establish (1) that his "counsel's representation fell below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. Review of counsel's performance under the first part of this test is highly deferential. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Counsel's performance is deficient only if it falls "outside

-7-

the wide range of professionally competent assistance." *Id.* Counsel's decisions are presumed to represent "sound trial strategy"; "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir.1999) (internal quotation marks omitted).

Mr. Lopez argues that Bandy rendered ineffective assistance because Dr. Logan's report provided notice of Mr. Lopez's likely incompetency yet Bandy failed to investigate the matter. He also argues that Bandy's failure to challenge Dr. Horne's report amounted to ineffective assistance.

These arguments are not without force. But we cannot say that the state court's rejection of these arguments was an unreasonable application of *Strickland.* After all, Drs. Logan and Horne both stated their conclusions that Mr. Lopez was competent; Mr. Bandy's own observations of Mr. Lopez's competency raised no doubts in his mind until he met resistance to his recommendations to plead guilty (and Mr. Lopez has not directed us to any evidence that he exhibited incompetency once the trial was underway); and three months after the trial of this case he entered guilty pleas before another judge without anyone raising a serious question concerning his competency.

## III.   CONCLUSION

We affirm the judgment of the district court.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge