FILED
United States Court of Appeals
Tenth Circuit

December 15, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ROSCOE FORD,

          Petitioner - Appellant,

    v.

TRAVIS TRANI, Warden, L.C.F.;
THE ATTORNEY GENERAL OF
THE STATE OF COLORADO,

          Respondents - Appellees.

No. 11-1316

(D. Colorado)

(D.C. No. 1:09-CV-01726-MSK)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**

---

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

Applicant Roscoe Ford, a Colorado prisoner, filed an application for relief

under 28 U.S.C. § 2254 in the United States District Court for the District of

Colorado. The district court denied the application. Applicant seeks a certificate

of appealability (COA) from this court to appeal the denial. *See* 28 U.S.C.

§ 2253(c)(1)(A) (requiring a COA to appeal the denial of a § 2254 application).

We deny his application for a COA and dismiss the appeal.

**I.      BACKGROUND**

An information filed in Colorado state court in 1997 charged Applicant

with aggravated robbery and alleged that he was an habitual criminal. Evidence

introduced at trial, as recounted by the Colorado Court of Appeals, showed the

following:

> The robber entered the line at [a Safeway] store's customer
> service counter and put on a pair of sunglasses. When he reached the
> front of the line, he placed a brown paper bag on the counter, lifted
> his T-shirt to reveal a gun in the waistband of his pants, and ordered
> one of the two clerks on duty to fill the bag with money.
> A third clerk followed the robber into the parking lot after the
> robbery. The robber ordered the clerk to stop, fired a gunshot into
> the air, and fled in a maroon car driven by a black female.
> The day after the robbery, one of the customer service clerks
> viewed a photo lineup from which she identified defendant as the
> robber. This clerk, who had seen the robber without his sunglasses,
> noticed that he had a "strange, lazy, blind" eye that was "very
> noticeable." Defendant is blind in his right eye.
> The other customer service clerk, who had not seen the robber
> without sunglasses, was unable to make a positive identification after
> viewing the lineup. The clerk who followed the robber into the
> parking lot also failed to identify him.
> During their investigation, police learned that a man
> resembling the robber had eaten a meal in a nearby pizza shop
> around the time the robbery occurred. The employee who served the
> man identified defendant as the customer.
> Police arrested defendant in a motel parking lot six days after
> the robbery, as he stood beside a maroon car that belonged to his
> female companion. The female informed police that she was the
> driver of the getaway car in the Safeway robbery.
> The driver of the getaway car, who traveled to defendant's trial
> from her home in Massachusetts, received use immunity for her
> testimony. She testified that she drove defendant to the Safeway
> store with the understanding that he would pick up a job application.
> Defendant returned to the car after twenty minutes with a bag
> concealed in his coat. He was agitated and told the witness to
> "[h]urry and drive." The driver admitted on cross-examination that,
> when the robbery occurred, she was a crack addict and on probation
> for possessing drug paraphernalia.
> In addition to the driver's testimony, the prosecution presented
> evidence of a similar robbery that occurred at another Safeway
> approximately eight months before the crime charged. On that

occasion, a man wearing sunglasses placed a brown paper bag and a bank deposit slip on the customer service counter, opened his jacket to reveal a gun in the waistband of his pants, and threatened to shoot the clerk if he did not fill the bag with money. The clerk later picked defendant as the robber from a photo lineup. A witness in the parking lot took down the license plate number of the car in which the robber escaped. The car belonged to defendant's mother, who had loaned it to defendant when the robbery occurred. When police searched the car a week after the robbery, they found clothing similar to that worn by the robber, as well as bank deposit slips identical to the one the robber placed on the counter.

Judgment Affirmed, *People v. Ford*, No. 99CA2072, at 1–3 (Colo. App. Aug. 23, 2001) (unpublished) (hereinafter "People v. Ford") (R., Vol. One App. at 4–6).

Applicant's first trial ended in a mistrial when the jury could not agree on a verdict. At his second trial the getaway driver did not testify. Her testimony at the first trial was read to the jury, however, after the trial court, found her to be unavailable. The jury convicted Applicant of aggravated robbery and the court adjudicated him to be an habitual criminal under Colorado law. He was sentenced to life in prison.

The Colorado Court of Appeals affirmed the conviction, and the Colorado Supreme Court denied Applicant's petition for a writ of certiorari. Applicant then filed a postconviction motion under Colorado Rule of Criminal Procedure 35(c). The trial court denied the motion but the Colorado Court of Appeals reversed in part and remanded the case for an evidentiary hearing on several issues. Applicant sought additional relief in a petition for certiorari to the Colorado Supreme Court, but it was denied. The trial court then conducted evidentiary

-3-

hearings and denied relief.  Applicant appealed again but the appeals court affirmed and the state supreme court denied certiorari.

Applicant then filed his § 2254 application asserting 11 claims:  (1) that the prosecution violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), because at his first trial it did not disclose until the closing argument the issuance of an arrest warrant for the getaway driver; (2) that he was deprived of his right to confront witnesses at the second trial because the getaway driver's testimony from the first trial was read to the jury; (3) that his right to a fair trial was denied when he was prevented from introducing evidence of the getaway driver's pending felony theft charge; (4) that his right to a fair trial was denied because the trial court refused to allow expert testimony regarding the inherent unreliability of eyewitness identification; (5) that his adjudication as an habitual criminal was improper because one of the prior convictions used to support that adjudication had resulted from the denial of his right to conflict-free counsel; (6) that the prosecution engaged in misconduct by telling the getaway driver not to appear for the second trial; (7) that his appellate counsel was ineffective in failing to raise a claim that the trial court abused its discretion in denying two challenges for cause during voir dire; (8) that his appellate counsel was ineffective because she failed to challenge the trial court's admission of evidence of three uncharged robberies; (9) that his appellate counsel was ineffective because she failed to raise a violation of *Batson v. Kentucky*, 476 U.S. 79 (1986); (10) that his right to

-4-

counsel was violated when counsel was not allowed to be present during a postindictment video lineup; and (11) that he was denied a fair trial because the trial court refused to appoint a special prosecutor.

In this court Applicant explicitly abandons his last three claims and pursues only the first eight.

## II.   DISCUSSION

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the [application] should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). In other words, the applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides that when a claim has been adjudicated on the merits in a state court, a federal court can grant habeas relief only if the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable

-5-

determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). As we have explained:

> Under the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.

*Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). Relief is provided under the "unreasonable application" clause "only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (brackets and internal quotation marks omitted). Thus, a federal court may not issue a habeas writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. *See id.* Rather, that application must have been unreasonable. Additionally, AEDPA requires deference to state-court fact findings. Such findings are presumed correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). For those of Applicant's claims that the Colorado Court of Appeals adjudicated on the merits, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA." *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004).

We now turn to Applicant's eight claims for relief pursued in this court.

(1) Applicant contends that the prosecution violated his rights under *Brady*, 373 U.S. 83, because at his first trial it did not disclose until the closing argument the issuance of an arrest warrant for the getaway driver on the day that she testified. He argues that if the warrant had been disclosed earlier, he could have used it to impeach the driver's credibility by showing her "propensity for dishonesty" and her motivation to get "a better plea bargain than that which was disclosed," Traverse to Resp'ts' Answer to Habeas Appl. at 5, *Ford v. Trani*, No. 09-cv-01726-MSK-KMT (D. Colo. April 28, 2010). The Colorado Court of Appeals rejected this argument because the undisclosed information was not material. It said that evidence of a witness's *arrest* is admissible only to show how it created a motive or bias for the witness's testimony, but the warrant could not have influenced her because there was no evidence that she knew about it until after she testified. The district court said that there was no clear and convincing evidence that the witness knew of the warrant earlier and concluded that the state court's ruling complied with federal law.

(2) Applicant asserts deprivation of his right to confront witnesses at the second trial because the getaway driver's testimony from the first trial was read to the jury. He claims that (a) the witness was available and (b) her previous testimony was unreliable, making the prior testimony inadmissible under *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). The Colorado Court of Appeals reviewed the

evidence regarding the government's extensive efforts to locate the witness and ruled that the trial judge had not abused its discretion in finding her unavailable. It also ruled that her testimony was reliable because it was testimony at a trial in which "[Applicant] was represented by counsel, who effectively cross-examined the witness." *People v. Ford*, at 8 (R., Vol. One App. at 11). Although Applicant asserted in district court that the witness was made unavailable by the efforts of the prosecution, that issue had been explored in an evidentiary hearing before the trial court on remand from the Colorado Court of Appeals. After hearing testimony of the getaway driver, the trial court found that she did not wish to testify and the government was trying to get her to testify. The district court found that Applicant did not rebut the presumption in favor of the state court's factual findings. The court also concluded that the state court's ruling on reliability was neither contrary to nor an unreasonable application of clearly established federal law.

(3) Applicant contends that his right to a fair trial was violated when he was prevented from introducing evidence at his second trial of the getaway driver's pending felony theft charge. As noted above, however, the Colorado Court of Appeals ruled that evidence of the charge was not material because the witness did not know of the charge when she testified at the first trial. Citing *Fox v. Ward*, 200 F.3d 1286, 1296–97 (10th Cir. 2000) (an evidentiary error justifying habeas relief must have been "so grossly prejudicial that it fatally infected the

-8-

trial and denied the fundamental fairness that is the essence of due process." (internal quotation marks omitted)), the district court ruled that the evidentiary exclusion was not fundamentally unfair.

(4) Applicant argues that his right to a fair trial was denied because the trial court prevented him from introducing expert testimony regarding the inherent unreliability of eyewitness identification. The Colorado Court of Appeals ruled that the trial court had not abused its discretion in excluding the testimony. It noted the trial court's reasoning that multiple eyewitnesses would identify Applicant at trial and that the jurors would be able to view the photo lineup that the witnesses were shown by the police; and it added that "the prosecution's corroborating evidence—which included the getaway driver's testimony and the evidence of defendant's involvement in a similar robbery at a different Safeway—diminished the probative value of the expert testimony." *People v. Ford*, at 10–11 (R., Vol. One App. at 14). The district court agreed with the state court's reasoning, and also observed that the reliability of the eyewitnesses was tested through effective cross-examination, so the exclusion of the expert did not render the trial fundamentally unfair.

(5) Applicant contends that his adjudication as an habitual criminal violated his constitutional rights because one of the prior convictions used to support that adjudication—a 1971 conviction in Missouri for first-degree murder—had been obtained in violation of his right to conflict-free counsel. He argued that his

attorney in that case also represented his codefendant and therefore did not raise the defense that the codefendant was the shooter and that Applicant did not know what the codefendant intended to do. The Colorado Court of Appeals ruled that the record supported the trial court's determination that there was no actual conflict of interest in the Missouri case. The district court concluded that, under *Lackawanna County District Attorney v. Coss*, 532 U.S. 394 (2001), Applicant could not contest his previous conviction in a § 2254 challenge to his Colorado sentence because he was represented by counsel in the Missouri case.

(6) Applicant argued that the prosecution engaged in misconduct by telling the getaway driver not to appear for the second trial. But, as stated previously, the Colorado Court of Appeals concluded that the record supported the trial court's determination that the getaway driver decided on her own accord not to appear for the second trial. The district court found that Applicant did not present clear and convincing evidence to the contrary.

(7) Applicant asserts that his appellate counsel was ineffective for failing to claim that the trial court abused its discretion in denying challenges for cause of two jurors—a retired police officer and an employee of a Safeway store that Applicant had allegedly robbed. In his second postconviction appeal the Colorado Court of Appeals carefully reviewed the voir dire of the two jurors and ruled that the record supported the trial court's determination that the two jurors were not subject to challenges for cause so that the claim would have been

-10-

rejected on appeal. The district court found that the state court ruling complied with federal law.

(8) Finally, Applicant contends that his appellate counsel was ineffective because she failed to challenge the trial court's admission of evidence of three uncharged robberies. In his second postconviction appeal the Colorado Court of Appeals had agreed with the trial court's conclusion that the evidence was admissible under state rules of evidence; the appeals court also determined that there was not a reasonable probability that he would have prevailed on this issue on direct appeal. It pointed to the striking similarities of the robberies, as probative of identification, and the lack of unfair prejudice. The district court, while noting that evidence of only one prior robbery was admitted at the second trial, affirmed the denial of this claim because Applicant failed to demonstrate that the state court unreasonably applied the standard for ineffective-assistance-of-counsel claims.

On all eight claims, no reasonable jurist could dispute the district court's conclusion that the state court's ruling was not based on an unreasonable determination of the facts and was neither contrary to nor involved an unreasonable application of clearly established federal law. All we add is an observation regarding claim 4. Applicant has not explained in this court what his expert on eyewitness identification could have said that would have been useful to challenge the specific identifications at trial. Only one witness other than the

getaway driver identified Applicant as the culprit,[1] and a defense investigator testified that the eyewitness had admitted that her sole means of identification was the culprit's bad eye.

## III. CONCLUSION

We GRANT Applicant's motion to proceed *in forma pauperis*, but DENY his application for a COA and DISMISS the appeal.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge

---

[1]The identification by the pizza-shop employee mentioned in the opinion by the Colorado Court of Appeals was simply a description of the customer as a black man with a bad eye.