Clarence Eldon CHARLTON,
Petitioner–Appellant,

v.

Eric FRANKLIN, Warden,
Respondent–Appellee.

No. 07–6004.

United States Court of Appeals,
Tenth Circuit.

Sept. 6, 2007.

M. Michael Arnett, The Arnett Law Firm, Oklahoma City, OK, for Petitioner–Appellant.

Diane L. Slayton, Asst. Atty. General, Office of the Attorney General, Oklahoma City, OK, for Respondent–Appellee.

Before LUCERO, HARTZ, and GORSUCH, Circuit Judges.

## ORDER DENYING CERTIFICATE OF APPEALABILITY

HARRIS L. HARTZ, Circuit Judge.

Clarence Charlton seeks a Certificate of Appealability (COA) to appeal the denial by the United States District Court for the Western District of Oklahoma of his application for relief under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1) (requiring COA to appeal the denial of habeas relief). The application, filed on May 2, 2006, sought relief from his state convictions for kidnapping, domestic abuse, and assault and battery. The district court adopted the magistrate judge's Report and Recommendation, denied the application, and denied a COA. Before this court Mr. Charlton contends that he was denied a fair trial in violation of the United States Constitution because (1) the trial court admitted evidence of prior bad acts in violation of Oklahoma law, (2) the trial court did not conduct a hearing to determine the voluntariness of his confession, (3) the trial court failed to instruct the jury regarding voluntariness, and (4) the trial court committed cumulative error. We deny a COA and dismiss the appeal.

## I. BACKGROUND

The offenses for which Mr. Charlton was convicted occurred on February 25, 2002. He had lived with Sandra Carter, their son, and Ms. Carter's daughter for about two years. During the last six months of this period, their relationship had been volatile and Mr. Charlton had physically abused her on several occasions. In an effort to end her relationship with Mr. Charlton, she and her children had moved into a different unit in the same apartments. On February 25, shortly after the move, Ms. Carter met with a lawyer about obtaining sole custody of their son. After she returned from the meeting, she was heading to Mr. Charlton's apartment to make a phone call when he arrived. She had been with their son, and he had been with her daughter. They all entered his apartment. Mr. Charlton demanded to know where she had been. She told him, and he began hitting her. When he stopped, she went to the bathroom to clean up the blood. He ripped the phone cord from the wall and attempted to choke her with it. He also held a box knife to her throat and told her to get cleaned up because they were going to her apartment. They continued to argue in her apartment until he told her to accompany him to return a car that he had borrowed. When they got back to Ms. Carter's apartment, she and Mr. Charlton again argued. He

choked her with a belt until she lost consciousness. He woke her up and tried to disguise the belt marks on her neck with hickeys.

Mr. Charlton filed a pretrial motion to exclude evidence of his prior aggressive acts; the motion was denied. He also moved to exclude as hearsay a conversation with a police officer in which he admitted guilt. The court said that the statement would not be hearsay but deferred ruling until a *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), hearing at trial.

At trial Ms. Carter testified to the events described above. In addition, a witness testified about an incident at his mother's house in August 1999 when Mr. Charlton unexpectedly arrived to pick up his children. The witness's sister had been married to Mr. Charlton and had custody of their children. When the witness asked where Mr. Charlton was taking the children, Mr. Charlton got angry, began cursing, and hit the witness. Another acquaintance of Mr. Charlton's testified that he had broken her nose in November 1999 when she tried to intervene in a dispute between him and her sister.

Sergeant Gamille Shockley of the Oklahoma City Police Department testified that while she was booking another prisoner at the jail on February 26, 2002, Mr. Charlton began talking to her. Without her asking him any questions, he said that he had choked Ms. Carter with a belt while Ms. Carter held a knife to his neck. She said: "Stop talking to me. Why are you telling me this?" He responded, "Because I did it and they're going to find me guilty anyway." R. Tr. Vol. 3 at 100. Mr. Charlton raised no objections to this testimony and the trial court did not hold a *Denno* hearing.

The Oklahoma Court of Criminal Appeals (OCCA) affirmed Mr. Charlton's convictions, although it remanded for correction of clerical errors in his sentence. The OCCA ruled that the evidence of prior assaults was properly admitted to "counter claims that the instant assaults were accidental in nature." *Charlton v. State*, No. F–2003–1098 (Okla.Crim.App. Feb. 2, 2005). It also denied relief for failure to hold a *Denno* hearing or to instruct the jury on the voluntariness of Mr. Charlton's confession because he had not argued that his confession was involuntary, just that he had never made it. Finally, it denied Mr. Charlton's claim of cumulative error because there had been no error.

## II. DISCUSSION

A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires "a demonstration that ... includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (internal quotation marks omitted). In other words, an applicant must show that the district court's resolution of the constitutional claim was either "debatable or wrong." *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides that when a claim has been adjudicated on the merits in state court, a federal court will grant habeas relief only when the applicant establishes that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). As we have stated,

> [u]nder the "contrary to" clause, we grant relief only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the [Supreme] Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, relief is provided only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. Thus we may not issue a habeas writ simply because we conclude in our independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Gipson v. Jordan,* 376 F.3d 1193, 1196 (10th Cir.2004) (brackets, citations and internal quotation marks omitted). Therefore, for those of Mr. Charlton's claims that were adjudicated on the merits in state court, "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for COA." *Dockins v. Hines,* 374 F.3d 935, 938 (10th Cir.2004).

■ The magistrate judge's report rejected Mr. Charlton's argument that admission of evidence of his prior bad acts denied him due process, saying that the evidence did not render Mr. Charlton's trial fundamentally unfair. *See Revilla v. Gibson,* 283 F.3d 1203, 1212–13 (10th Cir. 2002). No reasonable jurist could debate this conclusion.

■ As to Mr. Charlton's claim that he should have been afforded a *Denno* hearing, he did not challenge at trial the voluntariness of his confession, arguing only

that he never made the confession. Moreover, there is no evidence in the record to suggest that his confession was involuntary. Mr. Charlton points to no Supreme Court decision or any other authority that can support his contention that the OCCA's ruling on this claim was contrary to or an unreasonable application of clearly established federal law. No reasonable jurist could dispute the district court's denial of this claim.

■ Mr. Charlton also claims that the trial judge's refusal to instruct the jury on the voluntariness of his confession denied him due process. Again, however, he points to no established federal law requiring such an instruction when he did not request an instruction, he made no claim of involuntariness at trial, and there was no evidence that his statement was involuntary. No reasonable jurist could debate the district court's resolution of this issue.

■ Finally, Mr. Charlton argues that cumulative error rendered his trial fundamentally unfair. But his brief on appeal fails to assert any specific errors, not even the ones claimed earlier in his brief. No reasonable jurist could debate the district court's denial of this claim.

## III. CONCLUSION

We DENY Mr. Charlton's application for a COA and DISMISS the appeal.