**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LARRY SHOPTEESE,

      Petitioner - Appellant,

v.

DOUG WADDINGTON; DEREK
SCHMIDT,

      Respondents – Appellees.

No. 13-3057
(D.C. No. 5:12-CV-03084-SAC)
(D. Kan.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **KELLY**, **HOLMES,** and **MATHESON**, Circuit Judges.

---

      Larry Shopteese, a Kansas prisoner, seeks a certificate of appealability ("COA") to appeal the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition. Exercising jurisdiction under 28 U.S.C. § 1291, we deny his request for a COA and dismiss this matter.

---

      * This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

### A. *Trial and Direct Appeal*

Mr. Shopteese was charged with felony murder, aggravated robbery, aggravated battery, aggravated burglary, burglary, and theft in Kansas state court. After pleading not guilty, Mr. Shopteese was evaluated and treated for a psychotic disorder at Larned State Hospital for about nine months, until he was found competent to assist in his defense. *See Shopteese v. Waddington*, 12-3084-SAC, 2013 WL 328982, at *1 (D. Kan. Jan. 29, 2013). Dr. Leonardo Mabugat from Larned recommended that he continue taking sleep and antipsychotic medications "to remain competent and maintain affective stability." *Id.* at *3 (quotations omitted).

Mr. Shopteese's daily dosage of Geodon, the antipsychotic medication prescribed at Larned, was cut in half when he returned to Brown County jail. Around this time, Mr. Shopteese's trial counsel, Charles Tuley, asked Dr. Robert Barnett to examine Mr. Shopteese. Dr. Barnett concluded that Mr. Shopteese's medications were not "effective in controlling his hallucinations and delusions" and that he did "not see [Mr. Shopteese] as competent to stand trial." *Shopteese v. State*, 256 P.3d 897, at *2 (Kan. Ct. App. 2011) (unpublished table decision), *review denied* (Jan. 6, 2012). The state district court denied Mr. Shopteese's new motion to determine competency.

In exchange for a guilty plea to the felony murder and aggravated burglary charges, the State agreed to drop the remaining charges. On July 30, 2004, the state district court held a change of plea hearing. The court learned at the hearing that Mr.

-2-

Shopteese had run out of his medications and had not received them for four days. The court questioned Mr. Shopteese about how he was feeling. Mr. Shopteese stated that he was not feeling physically sick but that he was having trouble seeing things: when he looked at the wall he saw "different [red] designs, like people," and when he "turn[ed] to look at something different it stay[ed] the same picture and just float[ed]." *Shopteese*, 2013 WL 328982, at *5. Mr. Shopteese attributed this to long-standing vision problems. He said he was cross-eyed and saw a 3-D version of everything. He said he had "learned to try to block . . . out" the vision problems and repeatedly assured the court that he had no problems listening, understanding, and making a decision. *Id.*

The court accepted Mr. Shopteese's change of plea, and, on March 10, 2004, it sentenced him on the felony murder conviction to life without eligibility for parole for 20 years and on the aggravated burglary conviction to 34 months in prison, to be served consecutively. Over the next three weeks, Mr. Shopteese wrote the court three times to say that the plea agreement did not reflect the terms he and the State had agreed to, that he would like to withdraw his guilty plea, and that he would like to appeal his case or go to trial (collectively "motion to withdraw").

## B. *Motion to Withdraw Guilty Plea*

The state district court held a hearing on Mr. Shopteese's motion to withdraw. Mr. Tuley died five days before the hearing, and William McQuillan was appointed as Mr. Shopteese's new counsel. Between his appointment and the hearing on January 28, 2005, Mr. McQuillan met with Mr. Shopteese three times. Mr. McQuillan later testified

-3-

that "he initially had concerns regarding [Mr.] Shopteese's competence . . . but did not think it was an issue after reading the plea hearing transcript and meeting with [Mr.] Shopteese." *Shopteese*, 256 P.3d 897, at \*8. He further testified that during their meetings Mr. Shopteese "'seemed very functional' and 'cognizant' when answering questions . . . , which eliminated any concerns . . . about [Mr.] Shopteese's ability to function in a court hearing." *Shopteese*, 2013 WL 328982, at \*7. He therefore decided not to contact any doctors about the effect the lack of medication might have had on Mr. Shopteese's competency. Rather, he decided to challenge the plea based on Mr. Shopteese's (1) pre-sentencing understanding of the plea agreement that he would be eligible for parole after 15 years and would receive concurrent sentences and (2) claim that the signature on the plea agreement was not his.

The state district court then made specific findings as to Mr. Shopteese's arguments and denied the motion. The court also stated that Mr. Shopteese

> had a sufficient present ability to consult with his attorney which he showed with a reasonable degree of rational understanding. He appeared to understand the questions [the court] was asking. He was able to make a proper response. . . . He understood what he was there for. He understood what the charges were . . . [H]e met the standards for mental competence.

*Id.* at \*6-7 (quotations omitted).

Mr. Shopteese appealed the district court's denial of his motion to withdraw, arguing that his low I.Q. and unmedicated mental illness rendered his plea involuntary. The Kansas Supreme Court affirmed.

-4-

### C. *State Petition for Post-Conviction Relief*

On March 12, 2008, Mr. Shopteese filed a petition for post-conviction relief under

Kan. Stat. Ann. § 60-1507, arguing Mr. McQuillan provided ineffective assistance of

counsel. He alleged that Mr. McQuillan had "failed to argue on any substantial grounds

that Mr. Shopteese was not competent to enter the plea of no contest." *Shopteese*, 256

P.3d 897, at *7 (quotations omitted). He argued that Mr. McQuillan failed to investigate

and present expert testimony to establish that he was not taking his medication and thus

was incompetent.[1]

Mr. Shopteese called Dr. Barnett and Dr. Mabugat to testify at the evidentiary

hearing on the petition. The State called Mr. McQuillan and Dr. Sean Yutzy. The State

had asked Dr. Yutzy to review the documents in the case. After the hearing, the State

district court denied the post-conviction relief petition, concluding "that there was

nothing deficient in [Mr.] McQuillan's decision to forego presenting evidence or

argument about [Mr.] Shopteese's competency at the plea hearing." *Id*. at *9.

The Kansas Court of Appeals concluded that Mr. McQuillan made a strategic

decision to abandon the competency issue because, after reviewing the plea hearing

transcript and meeting with Mr. Shopteese, he believed the argument to be without merit.

The court stated that Mr. "McQuillan's determination about competency was based on an

---

[1] Mr. Shopteese also alleged that Mr. McQuillan failed to remind the court that Mr. Tuley had misinformed him about his parole eligibility under the life sentence. As Mr. Shopteese does not raise this issue in his federal habeas petition, we do not review the state court findings and conclusions as to this issue.

informed, reasonable, and professional assessment of the facts as they existed at the time." *Shopteese*, 2013 WL 328982, at 12. The court concluded that Mr. McQuillan's performance was not deficient and denied the ineffective assistance of counsel claim.

## D. *Federal Habeas Petition*

On April 4, 2012, Mr. Shopteese filed a federal habeas petition. He argued that Mr. McQuillan violated his right to effective assistance of counsel by failing to investigate and offer evidence on the competency issue.[2]

The federal district court noted that its habeas review of state court decisions is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). AEDPA provides that if a state court adjudicated the merits of a claim, a federal court cannot grant habeas relief unless the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

The district court also noted that "[t]he test for granting a writ under this standard is whether the state court's application of clearly established federal law was *objectively*

---

[2] Mr. Shopteese also argued that his right to effective assistance of counsel was violated when Mr. Tuley failed to stop the plea hearing despite Mr. Shopteese's obvious incompetence. The federal district court concluded that Mr. Shopteese abandoned this argument by failing to adequately brief it in his memorandum in support of the habeas petition.

*unreasonable." Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006) (quotations omitted). "It is not enough that the [state court's] decision is clearly wrong." *Id*. at 671. Rather, "a decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Id*.

Next, the district court reviewed the requirements that a defendant must show deficient performance and sufficient prejudice to demonstrate ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. Even when counsel's decision not to investigate is inadequately informed, a defendant must show that counsel's "strategic decision . . . not to investigate fully the law and facts possibly relevant to the defense was [not] a 'reasonable professional judgment.'" *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005) (quoting *Strickland*, 466 U.S. at 690).

The district court further noted that, when combining the "highly deferential" standards of both *Strickland* and § 2254, "the question is not whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

The court next reviewed the standard for a defendant's competency under the Due Process Clause: whether a defendant "has the capacity to understand the proceedings and

-7-

to assist counsel." *Godinez v. Moran*, 509 U.S. 389, 402 (1993); *see also id.* at 396-97; *United States v. Mackovich*, 209 F.3d 1227, 1231-32 (10th Cir. 2000). It then discussed the factors to determine competency: counsel's representations about the defendant's competency; the district court's observations at the time; evidence of irrational behavior, including demeanor at trial; and prior medical opinions on competence to stand trial. *See United States v. Cornejo-Sandoval*, 564 F.3d 1225, 1234-35 (10th Cir. 2009).

Applying those factors to this case, the district court reviewed the decision by the Kansas Court of Appeals, the medical opinions on Mr. Shopteese's competence, Mr. McQuillan's testimony, the district court's observations, and Mr. Shopteese's allegations about his behavior during the hearing.[3] The district court concluded "that a reasonable attorney, situated in the same position as [Mr.] McQuillan, would find insufficient cause to believe Defendant's competence was compromised." *Shopteese*, 2013 WL 328982, at *14. It further concluded that the decision by the Kansas Court of Appeals "that [Mr.] McQuillan's performance was not deficient under *Strickland* was 'well within the bounds of a reasonable judicial determination.'" *Id.* (quoting *Harrington*, 131 S. Ct. at 789).

Concluding that Mr. Shopteese failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the district court also denied Mr.

---

[3] Mr. Shopteese alleges that his attending the change of plea hearing with his face painted is additional evidence of his irrational behavior. The district court stated that "[t]he record neither shows that Petitioner's face was painted during the plea hearing, nor shows judicial notice of any face painting." *Shopteese*, 2013 WL 328982, at *14.

Shopteese a COA.

## II. **DISCUSSION**

Mr. Shopteese argues in his application for a COA that his right to effective assistance of counsel was violated because Mr. McQuillan failed to offer available evidence of Mr. Shopteese's incompetence and because this deficient performance resulted in prejudice to him.[4]

Mr. Shopteese may not appeal the district court's decision without a certificate of appealability. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Clark v. Oklahoma,* 468 F.3d 711, 713 (10th Cir. 2006). We may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, Mr. Shopteese must show "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quotations omitted). Moreover, "for those of [Mr. Shopteese's] claims that were adjudicated on the merits in state court, AEDPA's deferential treatment of state court decisions must be incorporated into our consideration

---

[4] Mr. Shopteese also argues that Mr. McQuillan violated his right to effective assistance of counsel by failing to offer evidence of Mr. Tuley's errors at the plea hearing. To the extent that Mr. Shopteese thus raises a separate ineffective assistance of counsel issue, he has forfeited appellate consideration of it by inadequately arguing it in his COA application. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). Moreover, because we deny COA based on *Strickland*'s deficiency requirement, we do not address Mr. Shopteese's arguments as to prejudice.

of his request for COA." *Charlton v. Franklin*, 503 F.3d 1112, 1115 (10th Cir.2007) (quotations omitted).

After examining the record on appeal, we affirm the denial of a COA for substantially the same reasons set forth by the district court.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge