FILED
United States Court of Appeals
Tenth Circuit

March 18, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

LAFAYETTE D. COSBY,

　　Petitioner - Appellant,

v.

WARDEN DAN SCHNURR,

　　Respondent - Appellee.

No. 18-3029
(D.C. No. 5:15-CV-03213-KHV)
(D. Kan.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **HARTZ**, **McKAY**, and **McHUGH**, Circuit Judges.
_____

　　Lafayette D. Cosby, a pro se Kansas inmate, seeks a certificate of appealability

(COA) to challenge the denial of his 28 U.S.C. § 2254 application for federal habeas

corpus relief. *See id.* § 2253(c)(1)(A) (requiring a COA to appeal the denial of a § 2254

application). For the reasons that follow, we deny a COA and dismiss this matter.

I

　　Mr. Cosby was convicted of premeditated first-degree murder. His conviction was

reversed on appeal, *see State v. Cosby*, 169 P.3d 1128, 1143 (Kan. 2007), but after a

second trial, he was reconvicted of premeditated first-degree murder and his conviction

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

was upheld by the Kansas Supreme Court, *see State v. Cosby*, 262 P.3d 285, 287, 296 (Kan. 2011). Mr. Cosby unsuccessfully sought post-conviction relief in the state courts and then turned to the federal courts for relief. The district court denied his § 2254 application, ruling some claims were procedurally defaulted because they were neither properly presented to, nor considered by, the state courts. The district court denied the remaining claims on the merits. After the court denied a COA, Mr. Cosby moved for reconsideration, but before the court ruled on his motion, he filed a notice of appeal. The court later denied the motion for reconsideration, and Mr. Cosby now seeks a COA to contest both the denial of his § 2254 application and the denial of his motion for reconsideration.

## II

### A. Scope of Review

We first consider the scope of our review. Mr. Cosby timely appealed the order denying his § 2254 application, but because he filed his notice of appeal before the district court ruled on his motion for reconsideration, he was obligated to amend his notice of appeal or file a new one once the court ruled on his motion for reconsideration to appeal the denial of that motion. *See* Fed. R. App. P. 4(a)(4)(B)(ii); *Ysais v. Richardson*, 603 F.3d 1175, 1179 (10th Cir. 2010). He did not, and therefore, the order denying his motion for reconsideration is not before us.

We also note that Mr. Cosby attempts to incorporate by reference all his prior arguments made in his original Kan. Stat. Ann. § 60-1507 motion, his § 2254 application, his traverse to the State's answer in the § 2254 proceedings, and his "Motion for

2

Summary Judgment" filed in the district court. Aplt. Br. at 31. He cannot do so, as we have held that such efforts to incorporate prior arguments by reference is unacceptable, even for pro se litigants. *Wardell v. Duncan*, 470 F.3d 954, 963-64 (10th Cir. 2006). Accordingly, we restrict our review to the arguments Mr. Cosby properly makes in his opening brief seeking a COA to appeal the denial of his § 2254 application.

### B. COA Standards

A COA is a jurisdictional prerequisite to our review. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To obtain a COA, an applicant must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An applicant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Where the court denies a claim on procedural grounds, the petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* (emphasis added). Our decision to grant or deny a COA is based on an "overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El*, 537 U.S. at 336.

### 1. Procedural Default

We begin with the claims the district court denied as procedurally defaulted. "This court cannot address claims that were defaulted in state court on independent and

3

adequate state procedural grounds unless petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002) (brackets and internal quotation marks omitted).

Mr. Cosby's conviction became final on October 3, 2011. Under Kansas law, he had one year to seek postconviction relief. *See* Kan. Stat. Ann. § 60-1507(f)(1). On September 10, 2012, he filed a timely motion for post-conviction relief under Kan. Stat. Ann. § 60-1507, raising a single claim: The "[t]rial court violated [his] Due Process Rights by dismissing his numerous Request[s] for New Counsel without conducting a proper inquiry into [his] grievances and constitutional interests." R., Vol. II (§ 60-1507 Mot. at 7, *Cosby v. State*, No. 2012-CV-487 (Douglas Cty., Kan. Sept. 10, 2012)). Elsewhere in his motion, Mr. Cosby noted that "Appellate Counsel on Direct Appeal failed to Raise these issues" and he did not receive the trial transcripts until after his appeal was final. *Id.* at 5.

After the one-year deadline had passed, on October 31, 2012, Mr. Cosby moved to amend his § 60-1507 motion, adding seven new claims: 1) the trial court refused to hear impeachment and bad faith evidence regarding police destruction of exculpatory evidence; 2) the trial court imposed upon him an ineffective attorney who indicated he was not being paid enough to effectively defend him; 3) the trial court imposed upon him an ineffective attorney who failed to present his version of the facts; 4) trial counsel was ineffective in failing to object to prosecutorial misconduct in using perjured testimony;

4

5) trial counsel was ineffective in failing to object to prosecutorial misconduct that improperly bolstered the credibility of state witnesses; 6) insufficient evidence of guilt; and 7) cumulative error. The state post-conviction court denied relief without addressing these new claims.

On appeal, the Kansas Court of Appeals held that all but two claims from the amended § 60-1507 motion were untimely, did not relate back to the original motion, and need not be considered. *See Cosby v. State*, No. 109,880, 2014 WL 4435848, at \*3-4 (Kan. Ct. App. Sept. 5, 2014) (per curiam) (unpublished). The court of appeals determined the remaining two claims—those alleging the trial court erred by imposing counsel who indicated he was not paid enough and who failed to present Mr. Cosby's version of the facts—arose from the same general issue implicated by his original claim: the trial court's failure to appoint substitute counsel. *See id.* at \*3. The court of appeals interpreted the former claim as alleging bias based on counsel's background in law enforcement, which related to an allegation in the original claim that counsel was acting under various conflicts of interest. *See id.* The court of appeals read the latter claim as alleging that counsel disallowed Mr. Cosby's version of the facts, similar to allegations in his original claim asserting a breakdown in communication. *See id.* After reviewing the record, the court of appeals ruled that Mr. Cosby and his attorney repeatedly reconciled their differences and he provided only conclusory and generic assertions to the contrary. *Id.* at \*7. Moreover, because the two amended claims simply restated sub-issues of the original claim, the court of appeals held they, too, were "embraced by [his] overarching claim" for which he was "conclusively not entitled to relief." *Id.* at \*8.

5

Mr. Cosby petitioned the Kansas Supreme Court for review, asserting the lower state courts took an overly narrow view of his motion, though he did not challenge the Kansas Court of Appeals' conclusion that his additional claims did not relate back to the original claim. The Kansas Supreme Court denied review.

Mr. Cosby then filed his § 2254 application, raising many of the same claims the state courts refused to consider, as well as some entirely new ones. He claimed: 1) appellate counsel failed to raise his post-conviction claims on direct appeal; 2) the trial court "violated [his] Due Process Rights by dismissing his numerous Requests for new counsel without conducting a proper inquiry into [his] grievances and constitutional interests," R. at 39; 3) the trial court refused to hear impeachment and bad faith evidence regarding police destruction of exculpatory evidence; 4) the trial court obstructed his ability to present his version of the facts; 5) the trial court imposed upon him an ineffective attorney who indicated he was not being paid enough to effectively defend Mr. Cosby; 6) the trial court imposed upon him an ineffective attorney who failed to present his version of the facts; 7) trial counsel rendered ineffective assistance by representing him under known conflicts of interest; 8) trial counsel was ineffective in failing to object to prosecutorial misconduct in using perjured testimony; 9) trial counsel was ineffective in failing to object to prosecutorial misconduct that improperly bolstered the credibility of state witnesses; 10) there was insufficient evidence of guilt; 11) cumulative error; and 12) the state courts on post-conviction review failed to provide a full and fair hearing on the merits of his § 60-1507 claims.

The district court concluded that claims 3, 4, 7, 8, 9, 10, and 11 were procedurally defaulted. The court reasoned that the Kansas Court of Appeals refused to consider these claims on timeliness grounds and Mr. Cosby failed to challenge that ruling before the Kansas Supreme Court. Moreover, the district court observed that there was no basis for excusing the default, and Mr. Cosby made only conclusory allegations that he was actually innocent. Thus, the court denied these claims as procedurally barred.

The district court's conclusion is not reasonably debatable. State prisoners must "exhaust[] the remedies available in the courts of the State" before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A). They "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Although the inmate need not cite "book and verse on the federal constitution," *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (internal quotation marks omitted), he "must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks omitted). "[I]f the court to which [the inmate] must present his claims in order to meet the exhaustion requirement would now find those claims procedurally barred, there is a procedural default for purposes of federal habeas review." *Bland*, 459 F.3d at 1012 (internal quotation marks omitted).

Here, claim 7 was never presented to any of the state courts. Nor did Mr. Cosby timely present claims 3, 4, 8, 9, 10, or 11 to the state post-conviction court. The Kansas

7

Court of Appeals ruled these claims were untimely and did not relate back to the original § 60-1507 motion. The court of appeals therefore declined to consider these claims, and Mr. Cosby failed to challenge that ruling in the Kansas Supreme Court. His failure to properly present these claims to the state courts for one complete round of review compels us to conclude that they were procedurally defaulted.

To overcome the procedural default, Mr. Cosby must show cause and prejudice or a fundamental miscarriage of justice. *See Hamm*, 300 F.3d at 1216. Mr. Cosby does not attempt to show cause and prejudice, though he does make several references to the miscarriage-of-justice exception, asserting he is actually innocent. But to satisfy the "demanding" actual-innocence exception to the procedural default rule, a petitioner must "demonstrate that more likely than not, in light of [] new evidence, no reasonable juror would find him guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 538 (2006). He "must present evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Cummings v. Sirmons*, 506 F.3d 1211, 1223 (10th Cir. 2007) (brackets and internal quotation marks omitted). He "must support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* (internal quotation marks omitted).

Mr. Cosby does not make this showing. The only "evidence" he has produced is what he calls "Exhibit A1F1," which consists of several hundred pages of background information, argument, and other material, some of which appears to be portions of the

trial transcripts.  R. at 75-745.  But there is no indication this information is new; Mr. Cosby tells us only that he attempted to supplement the state court record with this information on post-conviction review and the Kansas Court of Appeals denied his requests.  *See* Aplt. Br. at 17.  Given the trial transcripts, it appears that at least some of it was before the trial court.  Moreover, there is no indication this material would establish he is actually innocent.  In this context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).  Mr. Cosby says this exhibit shows he acted reasonably in response to threat of imminent danger posed by the victim, but he does not deny killing the victim.  Presented with Mr. Cosby's showing, reasonable jurists would not debate the district court's conclusion that he failed to show a miscarriage of justice to excuse the procedural default.

In addition to these claims, we conclude claim 1 also is procedurally defaulted. The district court considered this claim on the merits, but "we may deny a COA if there is a plain procedural bar to habeas relief, even though the district court did not rely on that bar," *Davis v. Roberts*, 425 F.3d 830, 834 (10th Cir. 2005).  Claim 1 alleges that Mr. Cosby's appellate attorney was ineffective in failing to raise all of the amended § 60-1507 claims on direct appeal.  But Mr. Cosby never presented this claim to the state courts, nor did the Kansas Court of Appeals consider it.  His original § 60-1507 motion merely noted that "Appellate Counsel on Direct Appeal failed to Raise these issues," referring to his original claim that the "[t]rial court violated [his] Due Process Rights by dismissing his numerous request[s] for New Counsel without conducting a proper inquiry into [his] grievances and constitutional interests."  R., Vol. II (§ 60-1507 Mot. at 5, 7,

9

*Cosby v. State*, No. 2012-CV-487 (Douglas Cty., Kan. Sept. 10, 2012)). Because Mr. Cosby failed to raise his original claim of trial court error on direct appeal, the State argued during post-conviction appellate proceedings that the original claim was barred. The Kansas Court of Appeals rejected that argument because Mr. Cosby noted that his appellate attorney failed to raise the issue on direct appeal. *See Cosby*, 2014 WL 4435848, at *4-5. But Mr. Cosby did *not* allege an independent claim that his appellate counsel was ineffective, and the Kansas Court of Appeals did *not* construe his comment as an independent claim for ineffective assistance of appellate counsel. Nor did the court of appeals consider any such claim. Therefore, because Mr. Cosby never presented claim 1 to the state courts, the claim is unexhausted and now procedurally defaulted. *See, e.g., Hawkins v. Mullin*, 291 F.3d 658, 669 (10th Cir. 2002) (holding claim of trial court error for failure to ensure knowing and voluntary waiver of opportunity to present mitigating evidence did not exhaust claim of ineffective assistance of counsel for failure to investigate possible mitigating evidence). "A claim of ineffective assistance of appellate counsel can serve as cause and prejudice to overcome a procedural bar, if it has merit." *Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 747 (10th Cir. 2016). But Mr. Cosby does not attempt to make this showing, and for the reasons explained above, he cannot show a miscarriage of justice. Accordingly, Mr. Cosby is barred from raising this claim.

  2. *Merits*

  We turn now to the claims that were not procedurally defaulted (claims 2, 5, and 6). Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), to obtain federal habeas relief for a claim adjudicated on the merits by a state court, an

10

applicant must show that the state-court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). A decision is "contrary to" federal law "only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004) (brackets and internal quotation marks omitted). A decision is an "unreasonable application" of federal law "only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* (brackets and internal quotation marks omitted).

Claims 2, 5, and 6 all arise out of the trial court's refusal to appoint substitute counsel. The district court recited state court findings and observed that federal law affords a trial court considerable discretion in deciding whether to appoint substitute counsel. The court further observed that to warrant substitute counsel, a defendant must show "good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." R. at 827 (internal quotation marks omitted). The court then separately analyzed Mr. Cosby's claims alleging a conflict of interest (Claim 5), a breakdown of communication (Claim 6), and the trial court's failure to conduct a proper inquiry into the nature of his grievances (Claim 2), and concluded that he was not entitled to relief.

11

*a. Claim 5-Conflict of Interest*

The Supreme Court has held that the Sixth Amendment right to assistance of counsel may be violated when a defendant's attorney actively represents conflicting interests. *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). Although reversal is automatic when a trial court compels an attorney to actively represent multiple defendants over counsel's objection without inquiry, *see id.* at 167-68, outside of that context a defendant claiming conflicted counsel must show a reasonable probability that counsel's performance prejudiced his defense, *see id.* at 166; *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

Here, the Kansas Court of Appeals denied relief, ruling that Mr. Cosby "never specified exactly what it is [counsel] should have done or [what other] defenses he failed to develop." *Cosby*, 2014 WL 4435848 at *7. The court of appeals observed that the trial court allowed Mr. Cosby to express his concerns multiple times and each time counsel indicated that he could adequately represent Mr. Cosby. *Id.* The court of appeals also cited the trial court's findings that Mr. Cosby and his attorney repeatedly reconciled their differences, he waited until the eve of his second trial to request substitute counsel, and his attorney did "a fine job." *Id.* (internal quotation marks omitted). Additionally, the Kansas Court of Appeals noted that Mr. Cosby offered no new information to question the trial court's findings. *See id.* Given this analysis, the district court concluded that the Kansas Court of Appeals' decision was not contrary to or an unreasonable application of Federal law, nor an unreasonable determination of the facts.

12

Reasonable jurists would not debate the district court's conclusion. The Kansas Court of Appeals effectively determined that Mr. Cosby failed to show prejudice. Although Mr. Cosby suggests prejudice should be presumed under *Wood v. Georgia*, 450 U.S. 261 (1981), *Wood* does not help him. *Wood* remanded to the trial court to determine whether the potential conflict of interest strongly suggested by the record actually existed. *See id.* at 273-74. This is because "an actual conflict of interest meant precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens*, 535 U.S. at 171 (internal quotation marks omitted). In the multiple representation context, "a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id.* (emphasis and internal quotation marks omitted). But Mr. Cosby never made this showing; he was the lone defendant, the trial "court allowed [him] to voice his concerns multiple times," and he never specified what else counsel should have done. *Cosby*, 2014 WL 4435848, at *7. The district court's denial of this claim is not debatable.

### b. Claim 6-Breakdown of Communication

Mr. Cosby also claimed substitution of counsel was warranted because there was a breakdown of communication between himself and his attorney. The Supreme Court has held that the Sixth Amendment right to assistance of counsel does not "guarantee[] a meaningful relationship between an accused and his counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983) (internal quotation marks omitted). The Kansas Court of Appeals denied relief, characterizing Mr. Cosby's relationship with his attorney as an "on-again-

13

off-again relationship." *Cosby*, 2014 WL 4435848, at *5, 8. The district court concluded that the Kansas Court of Appeals' decision was not contrary to or an unreasonable application of Federal law, nor an unreasonable determination of the facts.

Here again, reasonable jurists would not debate the district court's conclusion. Mr. Cosby offers no Supreme Court authority to question the Kansas Court of Appeals' decision. *See Simpson v. Carpenter*, 912 F.3d 542, 568 (10th Cir. 2018) ("[W]hen a defendant is unable to find any clearly established Supreme Court precedent in support of his claim, habeas relief is impossible to obtain." (brackets, ellipsis, and internal quotation marks omitted)). He does cite *Chapman v. California*, 386 U.S. 18 (1967), apparently for the proposition that the government must prove beyond a reasonable doubt that an error was harmless, *see* Aplt. Br. at 19. But any harmless error analysis would require a threshold showing of a constitutional violation, which Mr. Cosby has not made.

Mr. Cosby also contests the Kansas Court of Appeals' characterization of his relationship with his attorney as an "on-again-off-again relationship." Even if this characterization can be deemed a factual finding, however, Mr. Cosby fails to show the court of appeals' characterization of his relationship was an unreasonable determination of the facts in light of the record, *see* 28 U.S.C. § 2254(d)(2). He merely notes that counsel told the trial court during the first status conference before the retrial that Mr. Cosby might want another attorney. *See* Aplt. Br. at 21. Yet the Kansas Court of Appeals recognized this in evaluating the nature of their relationship. *See Cosby*, 2014 WL 4435848, at *6. Accordingly, reasonable jurists would not debate the district court's denial of this claim.

14

*c. Claim 2-Duty to Inquire into the Nature of the Attorney/Client Conflict*

Mr. Cosby also claimed the trial court failed to inquire into the nature of the attorney/client conflict. The Supreme Court has held that a trial court has a duty to inquire into the nature of a conflict of interest when counsel actively represents multiple defendants and notifies the court of an alleged conflict, but, outside of that context, the duty of inquiry arises "only when the trial court knows or reasonably should know that a particular conflict exists." *Mickens*, 535 U.S. at 167-68 (internal quotation marks omitted). If a trial court fails to inquire into a conflict of interest, a defendant must show an actual conflict of interest that adversely affected counsel's performance. *See id.* at 173-74.

The Kansas Court of Appeals denied relief, noting that the trial court allowed Mr. Cosby to express his concerns multiple times, counsel assured the court he could adequately represent Mr. Cosby, and both Mr. Cosby and counsel repeatedly reconciled their differences. The court of appeals also reasoned that Mr. Cosby offered nothing to question the trial court's conclusions and "never specified exactly what it is he contends [counsel] should have done or [what other] defenses he failed to develop." *Cosby*, 2014 WL 4435848, at *7. Given this conclusion, the district court determined the Kansas Court of Appeals' decision was not contrary to or an unreasonable application of Federal law because it concluded that he failed to show the alleged conflicts adversely affected counsel's performance or that he suffered prejudice. Again, this conclusion was not debatable: this was not a multiple representation case, the trial court heard Mr. Cosby's

grievances, and the Kansas Court of Appeals found that he failed to show the alleged conflict prejudiced his defense.

### 3. Claim 12—Failure of State Post-Conviction Courts to Hold a Hearing

Finally, Mr. Cosby seeks a COA on his claim that the state courts failed to hold a full and fair hearing during his post-conviction proceedings. The district court denied this claim, ruling it was not cognizable in federal habeas because it challenged the procedures of the state post-conviction remedy rather than the judgment under which Mr. Cosby is incarcerated. Reasonable jurors would not debate the denial of this claim because even if Mr. Cosby was entitled to a hearing under state law, "federal habeas corpus relief does not lie for errors of state law," *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam) (internal quotation marks omitted).

## III

Because reasonable jurists would not debate the district court's decision, we deny a COA and dismiss this matter.

Entered for the Court

Monroe G. McKay
Circuit Judge

16